

**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

---

Connecticut Financial Center          (203)821-3700
157 Church Street, 25ᵗʰ Floor          Fax (203) 773-5376
New Haven, Connecticut 06510          www.justice.gov/usao/ct

**February 15, 2022**

Carly Levenson
Assistant Federal Defender
Federal Defender Office
265 Church Street, Suite 702
New Haven, CT 06510

United States District Court
District of Connecticut
FILED AT   NEW HAVEN
*February 15*, 20 22
Dinah Milton Kinney, Clerk
By _____
Deputy Clerk

> Re:   United States v. Brian Hughes
>       Case No. 3:21-cr-2-JBA

Dear Attorney Levenson

    This letter confirms the plea agreement between your client, Brian Hughes (the "defendant"), and the United States Attorney's Office for the District of Connecticut (the "Government") in this criminal matter.

## THE PLEA AND OFFENSE

    In consideration for the benefits offered under this agreement, the defendant agrees to plead guilty to:

- Count one of the indictment charging a violation of 18 U.S.C. § 1343 (wire fraud);

    Count twelve of the indictment charging a violation of 18 U.S.C. § 1957 (illegal monetary transactions;

- Count fourteen of the indictment charging a violation of 26 U.S.C. § 7201 (tax evasion)

*Letter to Carly Levenson, Esq.*
*Page 2*

**Elements of Count One (Wire Fraud)**

The defendant understands that, to be guilty of the offense charged in count one, the following essential elements must be satisfied:

1. The defendant devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises (or willfully participated in such a scheme with knowledge of its fraudulent nature);

2. The defendant acted with the intent to defraud; and

3. in advancing, furthering, or carrying out the scheme, the defendant transmitted any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce.

**Elements of Count Twelve (Illegal Monetary Transactions)**

The defendant understands that, to be guilty of the offense charged in count twelve, the following essential elements must be satisfied:

1. The defendant engaged in a monetary transaction in or affecting interstate commerce;

2. The monetary transaction involved criminally derived property a value greater than $10,000;

3. The property was derived from specified unlawful activity;

4. The defendant knew that the monetary transaction involved criminally derived property; and

5. The monetary transaction took place within the United States.

**Elements of Count Fourteen (Tax Evasion)**

The defendant understands that, to be guilty of the offense charged in count fourteen, the following essential elements must be satisfied:

1. An attempt to evade or defeat a tax or the payment thereof;

2. An additional tax due and owing; and

3. Willfullness.

*Letter to Carly Levenson, Esq.*
*Page 3*

## THE PENALTIES

**Penalties Associated with Count One (Wire Fraud)**

Imprisonment

This offense carries a maximum penalty of 20 years.

Supervised Release

In addition, the Court may impose a term of supervised release of not more than three years to begin after any term of imprisonment. 18 U.S.C. § 3583.

The defendant understands that, should he violate any condition of supervised release, he may be required to serve a further term of imprisonment of up to two years per violation pursuant to 18 U.S.C. § 3583 with no credit for time already spent on supervised release.

Fine

This offense carries a maximum fine of $250,000. The defendant is also subject to the alternative fine provision of 18 U.S.C. § 3571. Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the offense; or (3) $250,000.

**Penalties Associated with Count Twelve (Illegal Monetary Transactions)**

Imprisonment

This offense carries a maximum penalty of 10 years.

Supervised Release

In addition, the Court may impose a term of supervised release of not more than three years to begin after any term of imprisonment. 18 U.S.C. § 3583.

The defendant understands that, should he violate any condition of supervised release, he may be required to serve a further term of imprisonment of up to two years per violation pursuant to 18 U.S.C. § 3583 with no credit for time already spent on supervised release.

Fine

This offense carries a maximum fine of $250,000. The defendant is also subject to the alternative fine provision of 18 U.S.C. § 3571. Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to

*Letter to Carly Levenson, Esq.*
*Page 4*

the defendant resulting from the offense; (2) twice the gross loss resulting from the offense; or (3) $250,000.

## Penalties Associated with Count Fourteen (Tax Evasion)

<u>Imprisonment</u>

This offense carries a maximum penalty of 5 years.

<u>Supervised Release</u>

In addition, the Court may impose a term of supervised release of not more than three years to begin after any term of imprisonment. 18 U.S.C. § 3583.

The defendant understands that, should he violate any condition of supervised release, he may be required to serve a further term of imprisonment of up to two years per violation pursuant to 18 U.S.C. § 3583 with no credit for time already spent on supervised release.

<u>Fine</u>

This offense carries a maximum fine of $100,000.  The defendant is also subject to the alternative fine provision of 18 U.S.C. § 3571.  Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the offense; or (3) $250,000.

## Additional Penalties Associated with All Counts

<u>Special Assessment</u>

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100 on each count of conviction.  The defendant agrees to pay the special assessment to the Clerk of the Court on the day of sentencing.

<u>Restitution</u>

In addition to the other penalties provided by law, the Court must also order that the defendant make restitution under 18 U.S.C. § 3663A, and the Government reserves its right to seek restitution on behalf of victims consistent with the provisions of § 3663A. The scope and effect of the order of restitution are set forth in the attached Rider Concerning Restitution. Restitution is payable immediately unless otherwise ordered by the Court. In any case in which the United States is a victim, the district court will ensure that all other victims receive full restitution before the United States receives any restitution. 18 U.S.C. § 3664(i).

Regardless of restitution that may be ordered by the Court noted above, the defendant agrees to make restitution in the amount of $2,991,880.00. This amount shall be reduced by any

*Letter to Carly Levenson, Esq.*
*Page 5*

amount recovered by the victims from the defendant or his estate in any other court proceeding, including the federal bankruptcy matter entitled *In re Brian Edward Hughes*, Case Number 19-31125 pending in the District of Connecticut. The defendant's restitution obligation is broken out by victims' initials in Exhibit A attached to this plea agreement.

The defendant agrees that restitution is $89,487 for the Tax Year 2015, $60,102 for the Tax Year 2016, $109,833 for the Tax Year 2017, and $211,458 for the Tax Year 2018 and that he will sign the IRS forms deemed necessary by the IRS to enable it to make assessment of the agreed-upon criminal restitution, including agreeing to sign IRS Form 8821, "Tax Information Authorization." The defendant further agrees to allow the contents of his IRS criminal file to be given to civil attorneys and support staff of the United States Attorney's Office and the IRS to enable them to investigate any taxes owed by the defendant, including, but not limited to, any civil penalties and interest. With respect to disclosure of the criminal file to the above-listed individuals and entities, the defendant waives any rights the defendant might hold under 26 U.S.C. §§ 6103, 7213, and Fed. R. Crim. P. 6(e). The defendant further waives any other rights he might have to non-disclosure of tax-related information. The defendant agrees as a special condition of probation or supervised release that he will cooperate with the IRS to pay all outstanding taxes, interest, and penalties. Finally, the defendant agrees to sign the Revenue Agent's Report (Form 4549) at or before sentencing, setting forth the defendant's civil tax liability for the years at issue.

If the Court orders the defendant to pay restitution to the IRS for the failure to pay tax, either directly as part of the sentence or as a condition of probation or supervised release, the IRS will use the restitution order as the basis for a civil assessment. 26 U.S.C. § 6201(a)(4). The defendant does not have the right to challenge the amount of this assessment. 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor the defendant's timely payment of restitution according to that schedule will preclude the IRS from administrative collection of the restitution-based assessment, including levy and distraint under 26 U.S.C. § 6331.

<u>Interest, penalties and fines</u>

Unless otherwise ordered, should the Court impose a fine or restitution of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of the fine or restitution not paid within 15 days after the judgment date. 18 U.S.C. § 3612(f). Other penalties and fines may be assessed on the unpaid balance of a fine or restitution pursuant to 18 U.S.C. § 3572(h), (*i*) and § 3612(g). Mr. Hughes reserves his right to ask the Court to waive interest and penalties consistent with the statute.

## THE SENTENCING GUIDELINES

<u>Applicability</u>

The defendant understands that the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case and is not bound by this plea agreement. The defendant agrees

*Letter to Carly Levenson, Esq.*
*Page 6*

that the Sentencing Guideline determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Office.  The defendant further understands that he has no right to withdraw his guilty plea if his sentence or the Guideline application is other than he anticipated, including if the sentence is outside any of the ranges set forth in this agreement.

<u>Acceptance of Responsibility</u>

At this time, the Government agrees to recommend that the Court reduce by two levels the defendant's adjusted offense level under § 3E1.1(a) of the Sentencing Guidelines, based on the defendant's prompt recognition and affirmative acceptance of personal responsibility for the offense. Moreover, should the defendant qualify for a decrease under § 3E1.1(a) and his offense level determined prior to the operation of subsection (a) is level 16 or greater, the Government will file a motion with the Court pursuant to § 3E1.1(b) which recommends that the Court reduce the defendant's Adjusted Offense Level by one additional level based on his prompt notification of his intention to enter a plea of guilty. The defendant understands that the Court is not obligated to accept the Government's recommendations on the reductions.

The above-listed recommendations are conditioned upon the defendant's affirmative demonstration of acceptance of responsibility, by (1) truthfully admitting the conduct comprising the offense(s) of conviction and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 of the Sentencing Guidelines, and (2) disclosing to the United States Attorney's Office and the United States Probation Office a complete and truthful financial statement detailing the defendant's financial condition. The defendant expressly authorizes the United States Attorney's Office to obtain a credit report concerning the defendant.

In addition, the Government expressly reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant engages in any acts, unknown to the Government at the time of the signing of this agreement, which (1) indicate that the defendant has not terminated or withdrawn from criminal conduct or associations (§ 3E1.1 of the Sentencing Guidelines); (2) could provide a basis for an adjustment for obstructing or impeding the administration of justice (§ 3C1.1 of the Sentencing Guidelines); or (3) constitute a violation of any condition of release.  Moreover, the Government reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant seeks to withdraw his guilty plea or takes a position at sentencing, or otherwise, which, in the Government's assessment, is inconsistent with affirmative acceptance of personal responsibility.  The defendant understands that he may not withdraw his plea of guilty if, for the reasons explained above, the Government does not make one or both of the recommendations or seeks denial of the adjustment for acceptance of responsibility.

<u>Stipulation</u>

Pursuant to § 6B1.4 of the Sentencing Guidelines, the defendant and the Government have entered into the attached stipulation, which is a part of this plea agreement.  The defendant understands that this stipulation does not set forth all of the relevant conduct and characteristics

*Letter to Carly Levenson, Esq.*
*Page 7*

that may be considered by the Court for purposes of sentencing.  The defendant understands that this stipulation is not binding on the Court.  The defendant also understands that the Government and the United States Probation Office are obligated to advise the Court of any additional relevant facts that subsequently come to their attention.

 <u>Guideline Stipulation</u>

 The parties agree as follows:

 The Guidelines Manual in effect on the date of sentencing is used to determine the applicable Guidelines range.

**Count One (Wire Fraud)**

 The defendant's base offense level under U.S.S.G. § 2B1.1 is 7.  That level is increased by 14 per U.S.S.G. § 2B1.1(I). That level is further increased by 2 per U.S.S.G. § 2B1.1(2)(A), resulting in an offense level of 23.

**Count Twelve  (Illegal Monetary Transactions)**

 The defendant's base offense level under U.S.S.G. § 2S1.1 is 23. That level is increased by 1 per U.S.S.G. § 2S1.1(b)(2)(A), resulting in an offense level of 24.

**Count Fourteen (Tax Evasion)**

 The defendant's base offense level under US.S.G. §§ 2T1.1 and 2T4.1 is 18. That level is increased by 2 per U.S.S.G. § 2T1.1(b)(1), resulting in an offense level of 20.

**Grouping**

 The convictions for the foregoing offenses are grouped per U.S.S.G. § 3D1.2 and the resulting offense level is 24. That level is increased by 2 per U.S.S.G. § 3B1.3, for a resulting offense level of 26. 3 levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, as noted above, resulting in a total offense level of 23.

 Based on an initial assessment, the parties agree that the defendant falls within Criminal History Category I.  The parties reserve the right to recalculate the defendant's Criminal History Category and corresponding sentencing ranges if this initial assessment proves inaccurate.

 A total offense level 23, assuming a Criminal History Category I, would result in a range of 46 to 57 months of imprisonment (sentencing table) and a fine range of $20,000 to $200,000, U.S.S.G. § 5E1.2(c)(3).  The defendant is also subject to a supervised release term of 1 year to 3 years.  U.S.S.G. § 5D1.2.

*Letter to Carly Levenson, Esq.*
*Page 8*

The Government and the defendant reserve their rights to seek a departure or a non-Guidelines sentence, and both sides reserve their right to object to a departure or a non-Guidelines sentence.

The defendant understands that the Court is not bound by this agreement on the Guideline ranges specified above. The defendant further understands that he will not be permitted to withdraw the guilty plea if the Court imposes a sentence outside any of the ranges set forth in this agreement.

In the event the United States Probation Office or the Court contemplates any sentencing calculations different from those stipulated by the parties, the parties reserve the right to respond to any inquiries and make appropriate legal arguments regarding the proposed alternate calculations. Moreover, the parties reserve the right to defend any sentencing determination, even if it differs from that stipulated by the parties, in any post-sentencing proceeding.

<u>Information to the Court</u>

The parties reserve their rights to address the Court with respect to an appropriate sentence to be imposed in this case. Moreover, the Government will discuss the facts of this case, including information regarding the defendant's background and character, 18 U.S.C. § 3661, with the United States Probation Office and will provide the Probation Officer with access to material in its file, with the exception of grand jury material.

## **WAIVER OF RIGHTS**

The defendant acknowledges and agrees that he is knowingly, intelligently, and voluntarily waiving the following rights:

<u>Waiver of Trial Rights and Consequences of Guilty Plea</u>

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.

The defendant understands that he has the right to plead not guilty or to persist in that plea if it has already been made, the right to a public trial, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against him, the right not to be compelled to incriminate himself, the right to testify and present evidence, and the right to compel the attendance of witnesses to testify in his defense. The defendant understands that by pleading guilty he waives those rights and that, if the plea of guilty is accepted by the Court, there will not be a further trial of any kind.

The defendant understands that, if he pleads guilty, the Court may ask him questions about each offense to which he pleads guilty, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making false statements.

*Letter to Carly Levenson, Esq.*
*Page 9*

<u>Waiver of Statute of Limitations</u>

The defendant agrees that, should the conviction following defendant's guilty plea be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution. The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

<u>Waiver of Right to Challenge Conviction</u>

The defendant acknowledges that under certain circumstances he is entitled to challenge his conviction. By pleading guilty, the defendant waives his right to appeal or collaterally attack his conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241. In addition to any other claims he might raise, the defendant waives his right to challenge his conviction based on (1) any non-jurisdictional defects in the proceedings before entry of this plea, (2) a claim that the statute(s) to which the defendant is pleading guilty is unconstitutional, and (3) a claim that the admitted conduct does not fall within the scope of the statute. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

<u>Waiver of Right to Appeal or Collaterally Attack Sentence</u>

The defendant acknowledges that under certain circumstances, he is entitled to challenge his sentence. In consideration for the benefits offered under this agreement, the defendant agrees not to appeal or collaterally attack the sentence in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241 if that sentence does not exceed 46 months of imprisonment, a 3-year term of supervised release, a $300 special assessment, and restitution in the agreed-upon amount, even if the Court imposes such a sentence based on an analysis different from that specified above. The Government and the defendant agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with, in whole or in part, the undischarged portion of any other sentence that has been imposed on the defendant at the time of sentencing in this case. Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

## ACKNOWLEDGMENT OF GUILT AND VOLUNTARINESS OF PLEA

The defendant acknowledges that he is entering into this agreement and is pleading guilty freely and voluntarily because he is guilty. The defendant further acknowledges that he is entering into this agreement without reliance upon any discussions between the Government and

him (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges his understanding of the nature of the offense to which he is pleading guilty, including the penalties provided by law.  The defendant also acknowledges his complete satisfaction with the representation and advice received from his undersigned attorney.  The defendant and his undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in the case.

The defendant acknowledges that he is not a "prevailing party" within the meaning of Public Law 105-119, section 617 ("the Hyde Amendment") with respect to the count of conviction or any other count or charge that may be dismissed pursuant to this agreement.  The defendant voluntarily, knowingly, and intelligently waives any rights he may have to seek attorney's fees and other litigation expenses under the Hyde Amendment.

## SCOPE OF THE AGREEMENT

The defendant acknowledges that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority.  The defendant acknowledges that no representations have been made to him with respect to any civil or administrative consequences that may result from this plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved.  Finally, the defendant acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving him.

## COLLATERAL CONSEQUENCES

The defendant understands that he will be adjudicated guilty of each offense to which he has pleaded guilty and will be deprived of certain rights, such as the right to hold public office, to serve on a jury, to possess firearms and ammunition, and in some states, the right to vote. Further, the defendant understands that if he is not a citizen of the United States, a plea of guilty may result in removal from the United States, denial of citizenship, and denial of admission to the United States in the future.  The defendant understands that pursuant to section 203(b) of the Justice For All Act, the Federal Bureau of Prisons or the United States Probation Office will collect a DNA sample from the defendant for analysis and indexing. Finally, the defendant understands that the Government reserves the right to notify any state or federal agency by which he is licensed, or with which he does business, as well as any current or future employer of the fact of his conviction.

## SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH

The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of his participation in the underlying offense, which forms the basis of the indictment in this case.  After sentencing, the Government will move to dismiss counts two through eleven, thirteen, and fifteen through

*Letter to Carly Levenson, Esq.*
*Page 11*

seventeen of the indictment because the conduct underlying the dismissed counts will have been taken into account in determining the appropriate sentence.

The defendant understands that if, before sentencing, he violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement.  If the agreement is voided in whole or in part, the defendant will not be permitted to withdraw his guilty plea.

## NO OTHER PROMISES

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

This letter shall be presented to the Court, in open court, and filed in this case.

Very truly yours,

LEONARD C BOYLE
ACTING UNITED STATES ATTORNEY


JOHN T. PIERPONT, JR.
ASSISTANT UNITED STATES ATTORNEY


The defendant certifies that he has read this plea agreement letter and its attachment(s) or has had it read or translated to him, that he has had ample time to discuss this agreement and its attachment(s) with counsel and that he fully understands and accepts its terms.

Brian Hughes                                                    Date    2/15/2022
The Defendant


I have thoroughly read, reviewed and explained this plea agreement and its attachment(s) to my client who advises me that he understands and accepts its terms.


CARLY LEVENSON, ESQ                                   Date    2/15/22
Attorney for the Defendant

*Letter to Carly Levenson, Esq.*
*Page 12*

## STIPULATION OF OFFENSE CONDUCT AND RELEVANT CONDUCT

The defendant and the Government stipulate to the following offense conduct and relevant conduct that give rise to the defendant's agreement to plead guilty to counts one, twelve, and fourteen of the indictment:

From March 2015 through January 2019, the defendant, Brian Hughes, ran a scheme or artifice in which he solicited investors' money and used it for his own purposes. He solicited money for primarily two separate purported investments: (1) Hand Crafted Brands ("HCB"), a company owned and managed by Mr. Hughes and others, and (2) an alcoholic beverage company wholly owned and operated by another company, which had no formal relationship with the defendant ("Company-1").

With respect to HCB, he solicited investors to raise capital to purchase a pre-existing alcoholic beverage company called Salute American Vodka ("Salute"). The first payment he received ($150,000) he used, in part, to pay his taxes and to pay his American Express credit card expenses. HCB did eventually purchase Salute in June 2016 for $450,000, using a combination of investor money and Mr. Hughes's own capital. Notwithstanding that purchase, he continued to solicit investments from investors for the purchase of Salute after June 2016. He also solicited money for "working capital" – or to build the brand or build the volume. In fact, he used some investor money for expenses unrelated to Salute such as paying down his home equity line of credit (which he had taken out in part to cover company expenses), credit card expenses, transferring money to a personal account (in part to reimburse the account for short-term loans to HCB), investing in a gym (which was unrelated to HCB), and to pay-off an earlier investor under the guise of a return on a prior investment made by the earlier investor in what is commonly known as a "lulling" payment.

With respect to Company-1, Hughes told investors that he was raising capital for the brand, and he told investors that he planned on investing in it. In fact, Hughes never invested in Company-1, and Hughes had no authority to raise capital on behalf of Company-1. Hughes spent the money he received for this investment on personal expenses, to pay earlier investors, and spent money on business related to Salute.

On January 20, 2016, victim S.S. made two separate investments of $62,500 in funds, totaling $125,000,[1] that he believed, based on misrepresentations made by the defendant, would be used by the defendant and their company HCB to purchase and run Salute. In truth and in fact, the defendant, upon receiving this money, sent $33,000 to pay his American Express card (which included some business expenses), $16,500 to a personal bank account (in part to reimburse himself for putting his own money into the business), and $44,000 to invest in a gym (which was unrelated to HCB).

On March 12, 2018, victim S.L. invested $50,000 in what he believed was a capital raising scheme associated with Company-1. The next day, on March 13, 2018, the defendant sent

---

[1] S.S. also invested an additional $25,000 on another date, but the parties agree that those funds did in fact go towards Salute, as promised.

*Letter to Carly Levenson, Esq.*
*Page 13*

$12,500 of those same funds to victim C.P., representing to C.P. that it was a return on a prior investment C.P. believed he had made in Company-1, *i.e.* a "lulling" payment.

On September 16, 2016, the defendant, for the calendar year, caused to be filed a tax return in which he knowingly and falsely reported his taxable income as $132,083. The defendant did not report income from his fraudulent scheme described above and therefore had taxable income for the calendar year 2015 that was substantially greater than the amounts he reported and caused to be reported on September 16, 2016.  The defendant has additional taxes due and owing for 2015 for $89,487.

In total, the loss amount attributable to the defendant is $1,360,662.21. This includes $470,880 of tax loss and $889,782.21 of loss related to investors. The defendant explicitly agrees to pay full restitution to the IRS as well as all investors in both HCB as well as Company-1 in the full amount of their investment, totaling $2,991,880.00.

This written stipulation is part of the plea agreement.  The defendant and the Government reserve their right to present additional offense conduct and relevant conduct to the Court in connection with sentencing.

_____
Brian Hughes
The Defendant

_____
JOHN T. PIERPONT, JR.
ASSISTANT UNITED STATES ATTORNEY

_____
CARLY LEVENSON, ESQ.
Attorney for the Defendant

*Letter to Carly Levenson, Esq.*
*Page 14*

## RIDER CONCERNING RESTITUTION

The Court shall order that the defendant make restitution under 18 U.S.C. § 3663A as follows:

1. If the offense resulted in damage to or loss or destruction of property of a victim of the offense:

   A. Return the property to the owner of the property or someone designated by the owner; or

   B. If return of the property is impossible, impracticable, or inadequate, pay an amount equal to:

      The greater of -
      (I) the value of the property on the date of the damage, loss, or destruction; or

      (II) the value of the property on the date of sentencing, less the value as of the date the property is returned.

2. In the case of an offense resulting in bodily injury to a victim –

   A. Pay an amount equal to the costs of necessary medical and related professional services and devices related to physical, psychiatric, and psychological care; including non-medical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

   B. Pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and

   C. Reimburse the victim for income lost by such victim as a result of such offense;

3. In the case of an offense resulting in bodily injury that results in the death of the victim, pay an amount equal to the cost of necessary funeral and related services; and

4. In any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

The order of restitution has the effect of a civil judgment against the defendant. In addition to the Court-ordered restitution, the Court may order that the conditions of its order of restitution be made a condition of probation or supervised release. Failure to make restitution as ordered may result in a revocation of probation, 18 U.S.C. § 3565, or a modification of the conditions of supervised release, 18 U.S.C. § 3583(e). Failure to pay restitution may also result in the defendant being held in contempt, or the defendant's re-sentencing to any sentence which might originally have been imposed by the Court. *See* 18 U.S.C. §§ 3613A, 3614.The Court may also order that the defendant give notice to any victim(s) of his offense under 18 U.S.C. § 3555.

*Letter to Carly Levenson, Esq.*
*Page 15*

## EXHIBIT A

| Victim | Amount | Investment Type |
|---|---|---|
| C.P. | 171,000 | Company-1 |
| S.L. | 150,000 | Company-1 |
| C.M and P.M. | $100,000 | Company-1 |
| B.B. | $50,000 | Company-1 |
| C.P | $70,000 | HCB |
| V.P., Sr. | $20,000 | HCB |
| V.P. | $40,000 | HCB |
| B.B. | $300,000 | HCB |
| J.L | $300,000 | HCB |
| S.S. | $150,000 | HCB |
| S.L. | $150,000 | HCB |
| W.S. | $75,000 | HCB |
| AG. And W.G. | $75,000 | HCB |
| R.B. | $20,000 | HCB |
| C.M. and P.M. | $100,000 | HCB |
| M.S. | $200,000 | HCB |
| A.S. | $50,000 | HCB |
| T.W. | $150,000 | HCB |
| J.G. | $150,000 | HCB |
| D.O. | $200,000 | HCB |
| Internal Revenue Service | $470880 | |